IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-637-REB-PAC

UNITED STATES OF AMERICA,

    Plaintiff,

v.

LEAH ANDERSON, WAYNE MAJORS, WESLEY METZGER, and JERRY MILLS,

    Defendants.

---

**MOTION FOR RELEASE OF INTERPLEADED FUNDS TO LEAH ANDERSON**

---

Defendants / Cross-Claimant Leah Anderson ("Anderson"), through her attorneys Richard B. Caschette, Ross W. Pulkrabek, and Justin G. Blankenship of the law firm Starrs Mihm & Caschette LLP, moves pursuant to the Court's Order re: Defendants' Motion for Summary Judgment [#78] for entry of an order directing that the interpleaded funds be released to Anderson, together with accrued interest.

**I.    SUMMARY**

The Court should award the $534,070 in interpleaded funds, together with interest, to Anderson.  She has made a visual identification of the money based on photographs taken by the government.  Additionally, wholly independent of Anderson's visual identification, the evidence points to the inevitable conclusion that the money that Jerry Mills stole and was interpleaded in this case belongs to Anderson.  The only other remaining claimant, Wayne Majors, agrees that the money belongs to Anderson.

## II. FACTS SHOWING THAT THE FUNDS BELONG TO ANDERSON

The following facts demonstrate that Anderson is the rightful owner of the interpleaded funds:

1. Anderson is married to Wayne Majors ("Majors"). Wesley Metzger ("Metzger") is Leah Anderson's brother. *See* Affidavit of Leah M. Anderson ¶ 3, attached as Ex. 1.

2. Anderson currently lives in Colorado. Prior to moving to Colorado in October 2003, she lived in Las Vegas, Nevada, and before that, in Reno, Nevada. *See id.* ¶ 1.

3. Since 2002, Anderson has been employed as the executive general administrator of American Legal, Inc., a company that provides administrative services to bankruptcy lawyers. *See id.* ¶ 5. Prior to her employment at American Legal, Anderson was self-employed doing similar work for American Attorney Center, P.C. *See id.*

4. For the past few years, Anderson and Majors have been involved in a dispute with the IRS regarding past tax liabilities. *See id.* ¶ 6.

5. Beginning in 2002, Anderson started saving the majority of her compensation so she and her husband could pay whatever taxes and fines, if any, they ultimately are found to owe. *See id.*

6. Between 2002 and 2004, Anderson earned $1,370,389.75 in compensation. *See id.* ¶ 7.

2

7. In or about June 2002, Anderson began keeping a large amount of money in cash, rather than solely in her bank accounts. *See id.* ¶ 8. She started doing this after the IRS unlawfully seized money and other property from her. *See id.* Although the IRS eventually returned the money it had seized from Anderson, the episode persuaded her that it would be best not to keep all of her money in bank accounts until her dispute with the IRS has been resolved in due course. *See id.*

8. By December 2004, Anderson had accumulated approximately $700,000 to $750,000 in cash. *See id.* ¶ 9. Details regarding the numerous banking transactions that resulted in Anderson receiving the cash are provided in her affidavit and are substantiated in exhibits to her affidavit. *See id.* ¶¶ 10-15.

9. Anderson and her family planned to spend Christmas 2004 in Mobile, Alabama. *See id.* ¶ 19. Anderson had intended to move her cash savings to a safe deposit box in a bank, but she ran out of time before she had to leave for Alabama. *See id.* ¶ 17. With her brother's help, Anderson put the cash in three metal boxes and hid the boxes in the attic of her brother's house. *See id.* Each box was capable of holding approximately $250,000. *See id.* Two of the boxes were full and a third box was mostly full. *See id.*

10. Anderson first met Jerry Mills ("Mills") in 2001, when he was hired as a handyman for her father-in-law's business. *See id.* ¶ 4. Mills recently had been released from prison after serving sentences for bank robbery and escape. *See id.*

11. In December 2003, after Anderson had moved to Colorado, American

3

Legal hired Mills to handle clerk, courier, collections, and other miscellaneous tasks. *See id.* ¶ 18.  Mills seemed like a dependable worker and never missed a day of work. *See id.*

12. Anderson and her family departed for Mobile, Alabama on December 21, 2004.  *See id.* ¶ 19.  Anderson left Mills to handle administrative tasks for American Legal during her absence.  *See id.* ¶ 20.

13. Anderson's work office was located in the basement of her brother's house.  *See id.*  As such, Mills had a key to Anderson's brother's house.  *See id.*

14. Anderson returned from her Christmas vacation on December 29, 2004.  *See id.* ¶ 21.

15. Mills did not show up for work on December 29, 2004, as he was scheduled to do.  *See id.*  Various efforts to locate Mills were unsuccessful.  *See id.*

16. Anderson eventually became nervous about Mills's absence.  *See id.*  She then discovered that her money was missing from her brother's attic.  *See id.*

17. Anderson filed a report with the Douglas County Sheriff's Department on December 31, 2004.

18. As the Court already is aware, the Douglas County Sheriff's Department contacted Mills in January 2005 and recovered $534,070 from him and various friends and relatives to whom he had given money.  *See* Complaint for Interpleader and Injunctive Relief ¶ 6 [#1] (Apr. 5, 2005).

19. The Douglas County Sheriff's Department subsequently turned the funds

4

over to the U.S. government for determination of whether they were subject to forfeiture under federal law.  *See id.* ¶ 7.

20.     The U.S. government decided not to proceed with forfeiture of the funds. *See id.* ¶ 11.  The government instead interpleaded the funds with this Court, naming Anderson, Majors, Mills, and Metzger as potential claimants.

21.     Metzger did not make any claim to the funds, and the Court has entered default judgment against him.  *See* Default Judgment Only as to Defendant Wesley Metzger [#62] (Sept. 12, 2005).

22.     The Court already has determined that Mills has no valid claim to the interpleaded funds and has dismissed Mills's claims to the funds with prejudice.  *See* Order re: Defendant's Motion for Summary Judgment at 4 [#78] (Oct. 19, 2005).

23.     Based on photographs of the funds taken by the government, Anderson is able to identify the interpleaded funds as those that she had earned from her employment at American Legal, that she had stored in her brother's attic, and that were stolen by Mills.  *See* Ex. 1 at ¶¶ 24-29.

24.     In particular, Anderson is able to identify some of the interpleaded money as cash that she received from the Park Lane branch office of Wells Fargo Bank in Reno, Nevada, where she used to do her banking when she lived in Reno and where she withdrew cash.  *See id.* ¶ 25.  Anderson also recognizes other interpleaded money as currency she received from other Wells Fargo banks.  *See id.*  Anderson makes this identification based on the bands holding together bundles of bills.  *See id.*

25. Anderson similarly is able to identify some of the interpleaded money as cash that she received from Heritage Bank, where she had a personal checking account and withdrew a substantial amount of cash. *See id.* ¶ 26.

26. In addition, Anderson is able to identify notations made by her husband made on many of the bills in the process of counting, stacking, and rubber-banding the bills together. *See id.* ¶ 27.

27. Majors and Mezger likewise state that the cash that Mills stole and that has been interpleaded in this case is money that Anderson had saved over the past several years. *See* Affidavit of Wayne Majors ¶ 4, attached as Ex. 2.; Affidavit of Wesley Metzger ¶ 5, attached as Ex. 3.

29. Metzger also corroborates Anderson's statement that Mills stole the interpleaded funds from the attic of Metzger's house, where Anderson was temporarily storing them. *See id.* ¶ 4.

30. Mills confessed to Metzger that he stole the money. *See id.* ¶ 7.

## II. ARGUMENT

"The standard of proof as to the rightful ownership of [money] is a preponderance of the evidence." *United States v. Estep,* 760 F.2d 1060, 1065 (10th Cir. 1985). One method of proving ownership of money is by positive visual identification. *See id.* at 1064. Ownership of money also may be established through circumstantial evidence. *See id.* at 1065 (affirming the trial court's finding that, although a bank claiming a right to stolen money could not make a positive visual identification of the

money, there was more than ample evidence to meet the preponderance of the evidence standard that the funds in question were stolen from the bank).

The preponderance of the evidence clearly demonstrates that the interpleaded funds belong to Anderson. Anderson is able to make a positive visual identification of the funds based on photographs taken by the government after the cash was recovered from Mills. Additionally, independent of Anderson's visual identification of the funds, the only reasonable conclusion to be drawn from the evidence is that Mills stole the money that Anderson had hidden in Metzger's attic over the 2004 Christmas holiday.

### A. Anderson has made a positive visual identification of the interpleaded funds.

Anderson has made a positive visual identification of the interpleaded funds based on photographs taken by the U.S. government after the cash was recovered from Mills. *See id.* ¶¶ 24-27. Anderson recognizes the bands around some of the currency recovered by the government as cash she received from the Wells Fargo Park Lane branch office in Reno, Nevada. *See id.* ¶ 25. Anderson used to do her banking at the Park Lane office when she lived in Reno, Nevada, and she received large amounts of cash from that bank. *See id.* ¶¶ 14, 25. Anderson likewise recognizes bands around some of the currency as cash she received from Heritage Bank, where she had a personal account. *See id.* ¶¶ 12, 26.

In addition to recognizing bands around stacks of currency, Anderson is able to identify the cash photographed by the government as being hers based on handwritten notations that her husband made on a number of the bills. *See id.* ¶ 27. Anderson's

7

husband made these notations when the couple was counting, stacking, and rubber-banding the bills together.  *See id.*

In sum, Anderson has identified several bands around stacks of bills as well as her husband's handwritten notations on many of the bills.  There is no dispute that all of the cash stolen by Mills and interpleaded in this case came from the same source.  Therefore, Anderson has established by a preponderance, based on positive visual identification, that the interpleaded funds belong to her.  *See Estep,* 760 F.2d at 1064.

### B.  Independent of Anderson's visual identification, the evidence demonstrates that the interpleaded funds belong to Anderson.

The only reasonable conclusion to be drawn from the evidence surrounding the theft and recovery of the interpleaded funds is that the funds belong to Anderson.  The evidence shows that, as of December 2004, Anderson had saved a large amount of cash—somewhat more than the Douglas County Sheriff's Department managed to recover from Mills, his friends, and his family.  W2 forms and payroll records show that Anderson earned over $1.3 million between 2002 and December 2004.  *See* Ex. 1 ¶ 7.  During this period, Anderson saved most of her earnings in the form of cash so she could pay the IRS whatever taxes and penalties she eventually may be found to owe.  *See id.* ¶¶ 6, 8.  Anderson has provided a detailed accounting, together with supporting documents, of transactions resulting in her receipt of over $850,000 in cash between 2002 and 2004.  *See id.* ¶¶ 9-15.  According to Anderson, she spent between $100,000 and $150,000, leaving her with approximately $700,000 to $750,000 in cash as of December 2004.  *See id.* ¶ 9.  The fact that Anderson had accumulated this amount of

cash is further corroborated by her recollection that she had three boxes of cash, two of which contained approximately $250,000 and a third containing between $200,000 and $250,000. *See id.* ¶ 17. The amount of cash that Anderson had saved as of December 2004 is fully consistent with the somewhat lesser amount of $534,070 recovered by the Douglas County Sheriff's Department. There is no dispute that Mills spent part of the cash that he stole before it was recovered.

The evidence further demonstrates that Mills had access to Anderson's cash. Anderson and Metzger both state that they hid her money in the attic of his house over the Christmas holiday in December 2004. *See* Ex. 1 ¶ 17; Ex. 3 ¶ 4. Mills had a key to Metzger's house while Anderson was out of town and was supposed to be handling administrative tasks for American Legal from Anderson's office in Metzger's basement. *See* Ex. 1 ¶ 20.

Additionally, the evidence is undisputed that Mills stole a large amount of money, part of which was recovered by authorities and interpleaded in this case by the United States of America. Mills confessed to stealing the money that was interpleaded.[1] The evidence also is undisputed that, when Anderson returned from her Christmas vacation on December 29, 2004, Mills was missing and so was the money she hid in Metzger's attic. *See* Ex. 1 ¶ 22.

Finally, the evidence shows that some of the cash recovered from Mills was held

---

[1] The Court already has determined that Mills stole the interpleaded funds. *See* Order re: Defendant's Motion for Summary Judgment at 3 [#78] (Oct. 19, 2005).

together with bands labeled "Heritage Bank" and "Park Lane Office Reno NV." *See* Ex. 1 at Ex G..  These are the same banking institutions from which Anderson had received substantial amounts of cash.  *See* Ex. 1 ¶¶ 11 - 12, 14, 25 - 26.

The only logical conclusion to be drawn from the evidence is that Mills stole the cash that Anderson had saved and stored in Metzger's attic.  There is no other rational explanation for why Anderson's money would have gone missing simultaneously with Mills's disappearance and his theft of a large amount of cash.  Likewise, there is no other rational explanation for how some of the cash recovered from Mills would have been held together with bands marked "Heritage Bank" and "Park Lane Office Reno NV," the same banks where Anderson received large amounts of cash.

WHEREFORE, Defendant Leah Anderson respectfully request that the Court enter judgment her favor for the interpleaded funds in the full amount of $534,070, together with any accumulated interest.

Respectfully submitted November 18, 2005.

                    s/ Ross W. Pulkrabek
Richard B. Caschette
Ross W. Pulkrabek
Justin G. Blankenship
STARRS MIHM & CASCHETTE LLP
1675 Broadway, Suite 1800
Denver, CO 80202
Phone:  (303) 592-5900
Fax:  (303) 592-5910
rcaschette@starrslaw.com
rpulkrabek@starrslaw.com
blankenship@starrslaw.com

*Attorneys for Defendants Leah Anderson and Wayne Majors*

11

## CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.

In addition, I hereby certify that on November 18, 2005 a courtesy copy of the foregoing was sent by United States mail, postage prepaid, addressed to the following as counsel for Jerry Mills, whose claims were dismissed pursuant to the Court's Order of October 19, 2005 [docket # 78]:

Steven Janiszewski, Esq.
Riggs, Abney, Neal, Turpen,
Orbison & Lewis, Inc.
7979 E. Tufts Avenue Parkway, Ste 1300
Denver, Colorado 80237
sjaniszewski@riggsabney.com

                                                s/ Ross W. Pulkrabek
                                                Richard B. Caschette
                                                Ross W. Pulkrabek
                                                Justin G. Blankenship
                                                STARRS MIHM & CASCHETTE LLP
                                                1675 Broadway, Suite 1800
                                                Denver, CO 80202
                                                Phone:  (303) 592-5900
                                                Fax:  (303) 592-5910
                                                rcaschette@starrslaw.com
                                                rpulkrabek@starrslaw.com
                                                jblankenship@starrslaw.com

                                                *Attorneys for Defendants Leah Anderson and Wayne Majors*