IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-CV-637-REB-PAC

**UNITED STATES OF AMERICA**
    Plaintiff,

v.

**LEAH ANDERSON, WAYNE MAJORS, WESLEY METZGER,
and JERRY MILLS,**
    Defendants.

---

### RESPONSE TO
### MOTION FOR RELEASE OF INTERPLEADED FUNDS TO LEAH ANDERSON

---

**COMES NOW** Defendant Jerry Mills, by and through the law firm of Riggs, Abney, Neal, Turpen, Orbison & Lewis, Steven Janiszewski, and submits his RESPONSE TO MOTION FOR RELEASE OF FUNDS TO LEAH ANDERSON.

### INTRODUCTION

Leah Anderson has filed a MOTION FOR RELEASE OF FUNDS TO LEAH ANDERSON [#80] (hereinafter, MOTION FOR FUNDS), in which she claims that she saved up the funds now held by the Court; and, that Mills stole said savings from her brother's attic. This is the substance of her COUNTERCLAIM against Mills [#16, pp.3-5]. Therefore, her MOTION FOR FUNDS should be treated as one for summary judgment. Because there is a genuine issue of material fact regarding whether Mills stole the funds at issue from the attic of Wesley Metzger's house, Anderson's MOTION FOR FUNDS must be denied. Furthermore, this Court has determined that the funds at issue were brought by Mills, upon instructions from Majors, to Colorado from Las Vegas, in a heavily taped box, in

December, 2004. ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [#78], pp. 1-2. Anderson has not asked this Court to reconsider its previous determination; nor has she shown this Court that its previous determination is clearly erroneous. Therefore, this Court's previous determination is conclusive, and Anderson's MOTION FOR FUNDS must be denied for that reason also.

## ARGUMENT

### 1. Anderson's MOTION FOR FUNDS Should Be Treated As A Motion For Summary Judgment.

A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may...move...for a summary judgment in the party's favor upon all or any part thereof. Fed.R.Civ.P. 56(a). This Court is presumed to be aware of the claims filed in this case, *St. Louis Baptist Temple, Inc. v. Federal Deposit Ins. Corp.*, 605 F.2d 1169, 1170, 1171-1172 (10th Cir. 1979), and Mills had emphasized Anderson's COUNTERCLAIM in his RESPONSE TO MOTION FOR SUMMARY JUDGMENT [70], pointing out that it was the only claim to the money, other than his, that had been filed in the case. With full knowledge of the claims filed in these proceedings, this Court determined that

> There appears to be no evidence that Anderson was involved in the events by which the money came into Mills's possession initially,[4] although she is the person whom defendants in their answer request be awarded the fund. [4] Indeed, in their answer, Anderson and Majors deny that they sent Mills to Las Vegas or ever directed him to take possession of the money. (Answer at 2, ¶ 7 [#10], filed May 2, 2005.)

Order Re: Defendant's Motion For Summary Judgment, #78, p. 2.

On page 5, this Court's ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [78] reads in pertinent part as follows:

Response To Motion For Funds/2

THERERFORE, IT IS ORDERED as follows:

(4) That if Anderson and Majors, or either of them, wishes to perfect a claim of ownership of the subject fund, any such motion **SHALL BE FILED** by November 18, 2005, or this matter will be administratively closed pursuant to **D.C.Colo.LCivR 41.2.**

This Court's ORDER necessarily required a motion that would present a claim of ownership that this Court had not yet considered when it signed the ORDER. An inescapable corollary of this Court's ORDER is that neither Anderson nor Majors had perfected a claim to the money at that time. This Court's ORDER cannot be read as a directive to Anderson to prove up her counterclaim.

This Court gave Majors and Anderson an opportunity to perfect a (new) claim to funds, but instead of complying with this Court's ORDER, Anderson filed a MOTION FOR FUNDS in which she argues for judgment on her COUNTERCLAIM [#16, pp. 3-5].  While it is true that Anderson's MOTION FOR FUNDS does not ask for treble damages, as her COUNTERCLAIM does, the alleged factual basis for her MOTION FOR FUNDS is identical to the alleged factual basis for her COUNTERCLAIM, to wit: Mills stole money that she had saved up from the attic of her brother, Wesley Metzger's, house.  Therefore, this Court should treat Anderson's MOTION FOR FUNDS as a motion for summary judgment.

### 2. Genuine Issues Of Material Fact Bar Summary Judgment.

#### a. Did Mills take the money from the attic?

Standards for the application of Rule 56 F.R.C.P. have been thoroughly developed by the 10th Circuit. *Busman Construction Company v. U.S. Conner*, 307 F.2d 888, 892 (10th Cir. 1962). While it is the duty of the trial court to grant a motion for summary judgment in an appropriate case, the relief contemplated by Rule 56 is drastic, and should be applied with caution to the end that the litigants will have a trial on bona

fide factual disputes. Under the rule no margin exists for the disposition of factual issues, and it does not serve as a substitute for a trial of the case nor require the parties to dispose of litigation through the use of affidavits. The pleadings are to be construed liberally in favor of the party against whom the motion is made, but the court may pierce the pleadings, and determine from the depositions, admissions and affidavits, if any, in the record whether material issues of fact actually exist. If, after such scrutiny, any issue as to a material fact dispositive of right or duty remains the case is not ripe for disposition by summary judgment, and the parties are entitled to a trial. *Bushman*, F.2d 892-993, internal citations omitted.

Mills denied the allegations in Anderson's COUNTERCLAIM in his ANSWER TO COUNTERCLAIMS FILED BY ANDERSON AND MAJORS [#17]. Mills states under oath that he "did not take any money from the attic of Wesley Metzger's house in December of 2004, or at any other time." Paragraph 2, Affidavit of Jerry Mills, attached hereto as Exhibit A1. In his interview with Douglas County Sheriff's Detective Chavez (#45 App., Exhibit 2), Mills denied the allegations that he stole the money from Metzger's attic (which allegations were under investigation by the Sheriff at that time) and described his trip to Las Vegas as the source of the funds.

Paragraphs 18 through 23 of the supporting AFFIDAVIT OF LEAH ANDERSON [#80, App., Exhibit 1], entitled "How Jerry Mills Stole My Money," do not establish that there is no issue as to the material fact that Mills stole the funds from the attic of Wesley Metzger's house. Indeed, none of those paragraphs (18 through 23) contains a direct statement that Mills stole the money from Metzger's attic. The only evidence of theft presented in Anderson's Affidavit is inferential and speculative—not the kind of

evidence that can be presented in an affidavit. Rule 56(e), F.R.C.P.; *Kamen v. AT & T,* 791 F.2d 1006, 1011 (2d Cir.1986) (finding that affiant's conclusory statements not based on personal knowledge).

Likewise, the statements of Wesley Metzger (paragraphs 4 and 5, AFFIDAVIT OF WESLEY METZGER, # 80, App., Exhibit 3) that "In December 2004, Jerry Mills stole over $500,000 of my sister's money that she had temporarily stored in my attic," and that "The Money that is the subject of this action belongs to my sister, Leah M. Anderson. This money represented her savings over the past several years," are conclusory and not based on personal knowledge. Even if they were admissible, they would merely contradict Mills's Affidavit (paragraph 5) and his statements to the Detective. As to the statements in paragraph 7 of Metzger's Affidavit, that Mills "confessed to taking the money," and that Detective Chavez told Metzger that "Mills had confessed to him that he had stolen the money," notice that the attic is not mentioned in those statements.

Mills addresses the statements in paragraph 7 of Metzger's Affidavit, as follows:

> 6. The statements in paragraph 7 are inaccurate, because they seem to say that I confessed to him that I took the money from his attic. I did speak with Wesley Metzger on the telephone several times during January of 2005, and I did tell him that I took the money—from the box that I had transported from Las Vegas. I did not tell Metzger that I took the money from his attic.
>
> 7. I never told Detective Chavez that I took the money from Metzger's attic. If I had told Chavez that I took the money from Metzger's attic, he would have arrested me, because that is the alleged crime he was investigating.
> Paragraphs 6 and 7, Affidavit of Jerry Mills, Exhibit A1.

Detective Chavez addressed these issues in his deposition, as follows:

> Q. Do you—after this deposition, do you have a feeling that, now, you want to file charges against Jerry Mills?

Response To Motion For Funds/5

A.  No.

Q.  The direct examination, counsel asked you about some taped telephone conversations. Do you remember those questions?

A.  I do.

Q.  And one of them, he said that the —he indicated to you that there was an admission made by Jerry Mills to the crime of taking the money out of the attic? Do you recall that?

A.  Say that again.

Q.  In one of those tapes, counsel asked you about an admission by Jerry Mills that he had taken the money from the attic.  Do you recall that question?

A.  Yes.

Q.  Do you recall hearing anything like that in any of the taped telephone conversations?

A.  No.

Q.  Do you recall counsel asking you on direct examination that, at some point you had him cold?

A.  Yes.

Q.  Do you agree that at any point, you had Jerry Mills cold on stealing money from the attic?

A.  No.
Page 6, line 1—page 7, line 2, Deposition of Ronnie Chavez, Exhibit 2A.

Because there is an issue as to whether Mills took the money at issue in this case from the attic of Wesley Metzger's house, this Court cannot grant Anderson's MOTION FOR FUNDS. *Bushman*, F.2d 892-993

### b. *Pecunia pro ipsum feteo*.

Anderson spends seven and half pages of her Affidavit [#80 Exhibit 1] paragraphs 5-17, explaining to his Court how she accumulated the funds at issue.  She

never once mentions that any of the money had been buried for any length of time. Indeed, it is fair to infer, from her explanation, that the money she saved up would have been in good, if not excellent, crisp, nearly new condition.  The money turned over to the Douglas County Sheriff and then to the IRS, which money is at issue in this case, was not in good condition.  Detective Chavez addressed the condition of the money in his deposition, as follows:

> Q.  Okay.  Was there anything about this money that would attract the attention of your nose?
>
> A.  Oh, yeah.
>
> Q.  What was that?
>
> A.  It was very, very—they almost smelled rotten.
>
> Q.  Rotten.
>
> A.  It was moldy.  Dirty.  It was even deteriorating—some of the money was deteriorating.
>
> Q.  Uh-huh.
>
> A.  It stunk.  I mean, it stunk aroma when you pulled it out and started counting it.
>
> Q.  Okay.  Now, is it fair to say that that would be consistent with the money having been buried?
>
> A.  Yes.
>
>    MR. CASCHETTE:  Object to the form of the question.
>
> Q.  (BY MR. JANISZEWSKI)  Would it be fair to say that that would be inconsistent with the money having been stored in an attic in a firebox?
>
> A.  Very inconsistent.
>
> Page 22, line 12—page 23, line 7, Deposition of Ronnie Chavez, Exhibit 2A.

Response To Motion For Funds/7

Detective Chavez had direct experience of the money at issue in this case. His deposition testimony contradicts the statements in Leah Anderson's Affidavit, creating a issue of fact that bars summary judgment. Later in his Deposition, Detective Chavez clarified his understanding of the evidence, as follows:

> Q. Now, you testified near the end that the total amount of the money that you collected from Mills was 5 - - 500,000 - - 500,000 - -
>
> MR. CASHETTE: 534,000
>
> Q. (BY MR. JANISZEWSKI) - - 534,000?
>
> A. That wasn't from Mills. That was the entire monies recovered.
>
> Q. Right. And isn't it true that Mills assisted you in collecting all that money?
>
> A. Yes.
>
> Q. Okay. After this deposition, do you feel as though you should run out and charge the relatives and friends of Jerry Mills who received some of this money with accessory or theft by receiving or something?
>
> A. No.
>
> Q. Do you recall near the end of the—of the direct examination, you were going back and forth with counsel about where the crime occurred?
>
> A. Yes.
>
> ………
>
> Q. Okay. If this is the way he got the money, is it fair to say that your interpretation is the crime occurred in Vegas?
>
> A. Yes. Jerry Mills did not take money from the attic of that house.
>
> Q. Right.
>
> A. I have no doubt in saying that. I have no hesitation in saying that whatsoever. Jerry Mills got that money when he did a run for Mr. Majors.

>Page 27, line 24—page 30, line 14, Deposition of Ronnie Chavez, Exhibit 2A.

Summary judgment is a drastic action, available only in cases where there is no material issue of fact.  *Frey v. Frankel*, 361 F.2d 437, 442 (10the Cir. 1966).  Here, material issues of fact bar this Court's granting Anderson's MOTION FOR FUNDS.

### 3.  This Court's Previous Determination Is Conclusive.

A fundamental precept of common-law adjudication is that an issue once determined by a competent court is conclusive.  *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979);  *Federated Dept. Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 2427, 69 L.Ed.2d 103 (1981);  *Cromwell v. County of Sac,* 94 U.S. 351, 352-353, 24 L.Ed. 195 (1876).  The law of the case doctrine sets forth the fairly straightforward legal and pragmatic principle of certainty throughout the proceedings of a case: [W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. *Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983).  However, courts are quick to recognize the flexibility of the rule and are permitted to overturn erroneous rulings as the underlying policy of the rule is one of efficiency, *Major v. Benton,* 647 F.2d 110, 112 (10th Cir.1981), not restraint of judicial power, *Messinger v. Anderson,* 225 U.S. 436, 444, 32 S.Ct. 739, 56 L.Ed. 1152 (1912).  Indeed, the presence of new evidence or subsequent contradictory precedent or a determination that the previous ruling was clearly erroneous are legitimate bases for not applying the law of the case doctrine. *Major,* 647 F.2d at 112. *Prairie Band of Potawatomi Nation v. Wagnon,* 402 F.3d 1015, 1018 (10th Cir.2005).

This Court has determined that the funds at issue were brought by Mills, upon instructions from Majors, to Colorado from Las Vegas, in a heavily taped box, in December, 2004. ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [#78], pp. 1-2.  Anderson has not asked this Court to reconsider its previous determination; nor has she shown this Court that its previous determination is clearly erroneous. Therefore, this Court's previous determination is conclusive, and Anderson's MOTION FOR FUNDS must be denied.

## CONCLUSION

For the reasons stated above Anderson's MOTION FOR FUNDS must be denied.

Dated:  December 8, 2005

RESPECTFULLY SUBMITTED,


/s/ Steven Janiszewski
Steven Janiszewski
**RIGGS, ABNEY, NEAL, TURPEN, ORBISON & LEWIS**
7979 East Tufts Avenue Parkway, Suite 1300
Denver, Colorado 80237
Phone:        (303) 298-7392
Fax:   (303) 298-1319
ATTORNEY FOR DEFENDANT JERRY MILLS

CERIFICATE OF SERVICE

I hereby certify that on December 8, 2005 I electronically filed the foregoing **RESPONSE TO MOTION FOR RELEASE OF INTERPLEADED FUNDS TO LEAH ANDERSON** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses

James S. Russell
Assistant United States Attorney
1225 17th Street, Suite 700
Denver, Colorado 80202
James.Russell2@usdoj.gov

Richard B. Caschette
Starrs Mihm & Caschette LLP
1675 Broadway, Suite 1800
Denver, Colorado
rcachette@starrslaw.com

/s/ Steven Janiszewski_____