EXHIBIT A-2

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                 FOR THE DISTRICT OF COLORADO

 3    Case No. 05-CV-637-REB-PAC

 4    THE UNITED STATES OF AMERICA,

 5              Plaintiff,

 6    vs.

 7    LEAH ANDERSON, WAYNE MAJORS, WESLEY METZGER, and JERRY
      MILLS,
 8
                Defendants.
 9    _____

10                  DEPOSITION OF RONNIE CHAVEZ
                         October 4, 2005
11                    Excerpt of Deposition

12    _____

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1   APPEARANCES:

 2   FOR THE PLAINTIFF:              No appearance

 3   FOR THE DEFENDANTS,             RICHARD B. CASCHETTE, ESQ.
     WAYNE MAJORS and LEAH           Starrs, Mihm &
 4   ANDERSON:                          Caschette, L.L.P.
                                     1675 Broadway
 5                                   Suite 1800
                                     Denver, CO   80202
 6                                      and
                                     DECLAN JOSEPH O'DONNELL, ESQ.
 7                                   Declan Joseph O'Donnell, P.C.
                                     499 So. Larkspur
 8                                   Castle Rock, CO   80104

 9   FOR THE DEFENDANT,              STEVEN JANISZEWSKI, ESQ.
     JERRY MILLS:                    Riggs, Abney, Neal, Turpen,
10                                      Orbison & Lewis
                                     7979 East Tufts Avenue Pkwy.
11                                   Suite 1300
                                     Denver, CO   80237
12   ,
     FOR THE DEPONENT:               KELLY DUNNAWAY, ESQ.
13                                   Douglas County Deputy County
                                        Attorney
14                                   100 Third Street
                                     Castle Rock, CO   80104
15
     ALSO PRESENT:                   Leah Anderson
16                                   Wayne Majors

17

18

19

20

21

22

23

24

25
```

```
 1          PURSUANT TO WRITTEN NOTICE, the deposition of
 2   RONNIE CHAVEZ, called for examination by the
 3   Defendants, Leah Anderson and Wayne Majors, was taken
 4   in a conference room at Starrs, Mihm & Caschette,
 5   L.L.P., 1675 Broadway, Suite 1800, Denver, Colorado, on
 6   the 4th day of October, 2005, at the hour of 9:08 a.m.,
 7   before Bonnie Carpenter, a Notary Public and Certified
 8   Shorthand Reporter in and for the State of Colorado and
 9   a Registered Professional Reporter.
10                        * * * * * * * * * *
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1            Q    Do you -- after this deposition, do you
 2   have a feeling that, now, you want to file charges
 3   against Jerry Mills?
 4            A    No.
 5            Q    The direct examination, counsel asked
 6   you about some taped telephone conversations.  Do you
 7   remember those questions?
 8            A    I do.
 9            Q    And one of them, he said that the -- he
10   indicated to you that there was an admission made by
11   Jerry Mills to the crime of taking the money out of the
12   attic?  Do you recall that?
13            A    Say that again.
14            Q    In one of those tapes, counsel asked you
15   about an admission by Jerry Mills that he had taken the
16   money from the attic.  Do you recall that question?
17            A    Yes.
18            Q    Do you recall hearing anything like that
19   in any of the taped telephone conversations?
20            A    No.
21            Q    Do you recall counsel asking you on
22   direct examination that, at some point, you had him
23   cold?
24            A    Yes.
25            Q    Do you agree that at any point, you had
```

```
 1   Jerry Mills cold on stealing money from the attic?
 2        A    No.
 3        Q    When -- is there a -- isn't it true that
 4   there is a detailed description of the money run that
 5   Jerry Mills claims he made in his taped interview?
 6        A    I think he gave me the route he took,
 7   but that's about it.
 8        Q    Did he tell you about how he physically
 9   received the money in the taped interview?
10        A    I don't remember he told me on the taped
11   interview.
12        Q    Okay.  When was the last time you saw
13   the taped interview?
14        A    Since we recorded it.
15        Q    So you haven't reviewed it since then?
16        A    No.
17        Q    You didn't review it before this?
18        A    No.
19        Q    Okay.  Do you -- did you look at Exhibit
20   B?
21        A    Which is --
22        Q    It's got a picture of -- what appears to
23   be Mr. Mills and then some words.
24        A    Yeah.
25        Q    Do you remember that?
```

```
 1          Q    And do you recall what the bands would
 2   contain?
 3          A    A $10,000 bundle.
 4          Q    A $10,000 bundle.  Okay.  Do you
 5   recall -- and you don't have to put it in an exact
 6   percentage, but what proportion of these bundles had
 7   Nevada on them?
 8          A    Very few bundles.
 9          Q    Okay.  Were there any dates on these
10   bundles?
11          A    I don't remember.
12          Q    Okay.  Was there anything about this
13   money that would attract the attention of your nose?
14          A    Oh, yeah.
15          Q    What was that?
16          A    It was very, very -- they almost smelled
17   rotten.
18          Q    Rotten.
19          A    It was moldy.  Dirty.  It was even
20   deteriorating -- some of the money was deteriorating.
21          Q    Uh-huh.
22          A    It stunk.  I mean, it stunk aroma when
23   you pulled it out and started counting it.
24          Q    Okay.  Now, is it fair to say that that
25   would be consistent with the money having been buried?
```

```
 1        A    Yes.
 2             MR. CASCHETTE:  Object to the form of
 3   the question.
 4        Q    (BY MR. JANISZEWSKI)  Would it be fair
 5   to say that that would be inconsistent with the money
 6   having been stored in an attic in a firebox?
 7        A    Very inconsistent.
 8        Q    Very inconsistent.  Isn't it fair to say
 9   that that might be one reason why you didn't bust Jerry
10   Mills for stealing money from an attic?
11        A    Yes.
12        Q    Your nose?
13        A    Yes.
14        Q    Do detectives, to your knowledge, rely
15   on all of their senses in their investigations?
16        A    I did, yes.
17        Q    Speaking of detectives, do detectives
18   have discretion as to whether to file a case or not?
19        A    Yes.
20        Q    Do you feel as though you abused your
21   discretion in the Jerry Mills matter?
22        A    No.
23        Q    Has anyone other than Rich Caschette or
24   Leah Anderson or Wesley Metzger told you that you were
25   violate -- you violated or abused your discretion in
```

CARPENTER REPORTING, INC.
(303) 752-1200

```
 1  we've got a title issue.  Do you remember the title --
 2          A    Uh-huh.  Yes.
 3          Q    -- to the car?  On page -- Bates stamp
 4  144.  Isn't it true that it shows a security interest
 5  holder/lessor?  It's at 144.
 6          A    Yes, it does.
 7          Q    Isn't it true that that's Major Brands
 8  Sales and Leasing?
 9          A    Yes.
10          Q    In Reno, Nevada?
11          A    Correct.
12          Q    And this is an Oregon title?
13          A    It is an Oregon title.
14          Q    With an address for Jerry Mills in
15  Ontario, Oregon?
16          A    Yes.
17          Q    Was that the address you had for Jerry
18  Mills?
19          A    No.
20          Q    During the entire course of your
21  investigation, did Jerry Mills or anybody else ever
22  tell you that Jerry Mills had ever lived in Oregon?
23          A    No.
24          Q    Now, you testified near the end that the
25  total amount of the money that you collected from Mills
```

```
 1    was 5 -- 500,000 -- 500,000 --
 2              MR. CASCHETTE:  534,000.
 3         Q    (BY MR. JANISZEWSKI)  -- 534,000?
 4         A    That wasn't from Mills.  That was the
 5    entire monies recovered.
 6         Q    Right.  And isn't it true that Mills
 7    assisted you in collecting all that money?
 8         A    Yes.
 9         Q    Okay.  After this deposition, do you
10    feel as though you should run out and charge the
11    relatives and friends of Jerry Mills who received some
12    of this money with accessory or theft by receiving or
13    something?
14         A    No.
15         Q    Do you recall near the end of the -- of
16    the direct examination, you were going back and forth
17    with counsel about where the crime occurred?
18         A    Yes.
19         Q    And isn't it true that if Jerry Mills
20    formed the intent to intercept that money and not
21    deliver it to whoever he was supposed to deliver it
22    to -- I'll just break it down.  If he formed the intent
23    in Nevada, the crime would have been committed in
24    Nevada?
25         A    Yes.
```

```
 1              MR. CASCHETTE:  Object to the form of
 2   the question.
 3         A    I believe so.
 4         Q    (BY MR. JANISZEWSKI)  If he formed the
 5   intent in Utah, as he was driving across Utah, that's
 6   where it would have been committed?
 7         A    Yes.
 8         Q    And if he formed the intent somewhere in
 9   Colorado, before he got into Douglas County, that's
10   where it would have been --
11         A    No.  Let me back up on that.  I disagree
12   with that.
13         Q    Okay.
14         A    I think that when he picked up the
15   money, that's when the -- that's when the whole episode
16   initiated.
17         Q    Okay.  So that makes it clear?
18         A    Originated.
19         Q    Isn't it true that if this is the way he
20   got the money, if he, indeed, didn't take it out of the
21   attic, which the -- the nose, apparently -- the nose
22   tells us that it didn't come from the attic, but it was
23   buried?
24              MR. CASCHETTE:  Object to the form of
25   the question.  No foundation.
```

```
 1         Q     (BY MR. JANISZEWSKI)  Okay.
 2               MR. JANISZEWSKI:  I think he's already
 3   testified about his nose.
 4               MR. CASCHETTE:  The nose knows.
 5               MR. JANISZEWSKI:  His nose.
 6         Q     (BY MR. JANISZEWSKI)  Okay.  If this is
 7   the way he got the money, is it fair to say that your
 8   interpretation is the crime occurred in Vegas?
 9         A     Yes.  Jerry Mills did not take money
10   from the attic of that house.
11         Q     Right.
12         A     I have no doubt in saying that.  I have
13   no hesitation in saying that whatsoever.  Jerry Mills
14   got that money when he did a money run for Mr. Majors.
15         Q     Right.
16         A     I firmly believe that.
17         Q     Right.
18         A     Can I prove that?  No.  Thus I can't
19   prove that --
20         Q     But, in your mind, if --
21               MR. CASCHETTE:  Let him finish.
22               MR. JANISZEWSKI:  He's finished.
23               MR. CASCHETTE:  He wasn't finished.  You
24   cut him off.  Please continue.
25               THE DEPONENT:  I'm finished.
```

```
 1                    C E R T I F I C A T E

 2      STATE OF COLORADO        )
                                 ) ss
 3      COUNTY OF ARAPAHOE       )

 4                I, Bonnie Carpenter, Notary Public of
        the State of Colorado, duly appointed to take the
 5      deposition of the above-named Deponent, do hereby
        certify that previous to the commencement of the
 6      examination of the said above-named Deponent, he was
        first by me duly sworn to testify the truth, the
 7      whole truth and nothing but the truth touching and
        concerning the matters in controversy between the
 8      parties hereto, so far as he should be interrogated
        concerning the same;
 9
                  That said deposition was
10      stenographically reported by me at the time and place
        heretofore set forth, and was reduced to typewritten
11      form under my supervision as per the foregoing;

12                That the foregoing excerpt is a true and
        correct transcript of my shorthand notes then and
13      there taken;

14                That after the deposition was
        transcribed, the same was submitted by letter to the
15      Deponent for reading and signing, a copy of which is
        hereto annexed;
16
                  That I am not kin or in anywise
17      associated with any of the parties to said cause of
        action or their counsel and that I am not interested
18      in the event thereof;

19                IN WITNESS WHEREOF, I have hereunto
        set my hand and seal this ___ day of _____,
20      2005.

21                My Commission Expires:  9-22-2007.

22                               _____
                                 Bonnie Carpenter
23                               Notary Public
                                 12510 East Iliff
24                               Suite 120
                                 Aurora, CO  80014
25
```

CARPENTER REPORTING, INC.
(303) 752-1200