IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-637-REB-PAC

UNITED STATES OF AMERICA,

    Plaintiff,

v.

LEAH ANDERSON, WAYNE MAJORS, WESLEY METZGER, and JERRY MILLS,

    Defendants.

---

**REPLY IN SUPPORT OF MOTION FOR RELEASE OF
INTERPLEADED FUNDS TO LEAH ANDERSON**

---

    Defendants / Cross-Claimant Leah Anderson ("Anderson"), through her attorneys Richard B. Caschette, Ross W. Pulkrabek, and Justin G. Blankenship of the law firm Starrs Mihm & Caschette LLP, submit the following reply in support of their Motion for Release of Interpleaded Funds to Leah Anderson [#80] (Nov. 18, 2005).[1]

**I.  JERRY MILLS LACKS STANDING TO OPPOSE THE RELEASE OF THE INTERPLEADED FUNDS TO ANDERSON, AND HIS RESPONSE SHOULD BE STRICKEN.**

    Jerry Mills ("Mills) has no standing to oppose the Motion for Release of Interpleaded Funds to Leah Anderson.  The Court dismissed Mills's claim to the funds with prejudice.  *See* Order Re: Defendants' Motion for Summary Judgment at 3-4 [#78] (Oct. 19, 2005).  Mills is no longer a party with respect to the interpleader claim.

    In light of the previous dismissal of Mills's claim to the funds and his lack of

---

[1] Jerry Mills's Response to Motion for Release of Interpleaded Funds to Leah Anderson was filed on December 8, 2005 at docket entry number 81.

standing, Mills's continued opposition to release of the funds to Anderson borders on harassment. The crux of the standing inquiry is whether the person attempting to assert a position in litigation has a "personal stake" in the dispute. *Raines v. Byrd,* 521 U.S. 811, 819 (1997). In other words, the person must have a legally protected interest at issue. *See, e.g., Wyo. Sawmills, Inc. v. United States Forest Serv.,* 383 F.3d 1241, 1246 (10th Cir. 2004). A person can have standing with respect to some claims in an action but lack standing with respect to others. *See Beedle v. Wilson,* 422 F.3d 1059, 1064 n1 (10th Cir. 2005).

Mills has no legally protected interest in the funds or their disposition. Rather, Mills's meddling in Anderson's legitimate claim to the funds is nothing more than an attempt to advance a personal vendetta against his former employer. Whether the Court grants or denies the Motion for Release of Interpleaded Funds to Leah Anderson will have no effect on Mills. The Court should strike Mills's response on the grounds that he lacks standing to oppose Anderson's motion that the funds be released to her.

## II. ANDERSON'S MOTION FOR RELEASE OF THE INTERPLEADED FUNDS IS NOT A MOTION FOR SUMMARY JUDGMENT ON HER CLAIMS AGAINST MILLS AND SHOULD NOT BE TREATED AS SUCH.

Anderson has moved for an order directing that the interpleaded funds, together with accumulated interest, be released to her. This motion was made pursuant to the Court's directive that, "if Anderson and Majors, or either of them, wishes to perfect a claim of ownership of the subject fund, any such motion SHALL BE FILED by November 18, 2005 . . . ." Order re: Defendant's Motion for Summary Judgment at 5. In that same order, the Court noted that "'[t]he standard of proof as to rightful ownership . . . is a

2

preponderance of the evidence.'" *Id.* at 3 (quoting *United States v. Estep,* 760 F.2d 1060, 1065 (10th Cir. 1985)).  The Court challenged Majors and Anderson to present affirmative evidence showing that one or both of them are the rightful owners of the money.  *Id.* at 3-4.

Mills's argument that the Motion for Release of Interpleaded Funds to Leah Anderson should be treated as a motion for summary judgment is flawed in several respects.  There is no party *against* whom summary judgment even could be sought with respect to the interpleader claim.  The United States never asserted a right to the funds in the first instance and, in any event, has been dismissed as a party to this action.  Mills's claim to the funds has been dismissed with prejudice.  Other than Wayne Majors, who agrees the funds belong to Anderson, there are no parties who have standing to oppose the release of the funds to Anderson.

The implication of Mills's argument that Anderson's motion should be analyzed under Fed.R.Civ.P. 56 is that he is entitled to a trial on the interpleader claim.  However, Mills clearly is *not* entitled to a trial on the interpleader claim because the Court dismissed his claim to the funds with prejudice.

Anderson has not moved for summary judgment against Mills at this stage on her claim of civil theft.  Granting the Motion for Release of Interpleaded Funds to Leah Anderson will not affect Mills's liability on that claim.

This Court correctly set forth the standard to be applied to the Motion for Release of Interpleaded Funds to Leah Anderson when it challenged Anderson to prove her ownership interest in the funds by a preponderance of the evidence.  The issue for the

3

Court is whether Anderson has presented evidence that, more probably than not, she is the rightful owner of the funds.

## III. THE PREPONDERANCE OF THE EVIDENCE SHOWS THAT ANDERSON IS THE RIGHTFUL OWNER OF THE INTERPLEADED FUNDS.

The preponderance of the evidence demonstrates that Anderson is the rightful owner of the interpleaded funds. She has made a positive visual identification of currency based on photographs that the government took of the funds before interpleading them in this case. Further, the evidence clearly establishes that the interpleaded funds are the same cash that Anderson stored in her brother's attic in December 2004. The evidence proving Anderson's ownership of the funds is set forth in extensive detail in the Motion for Release of Interpleaded Funds to Leah Anderson and need not be repeated here.

## IV. THE COURT HAS NOT CONCLUSIVELY "DETERMINED" THAT MILLS OBTAINED THE INTERPLEADED FUNDS IN LAS VEGAS, NEVADA.

Mills's assertion that "this Court determined that the funds at issue were brought by Mills upon instructions from Majors, to Colorado, from Las Vegas, in a heavily taped box, in December 2004" is absurd. Response to Motion for Release of Interpleaded Funds to Leah Anderson at 1-2; *see also id.* at 10. The Court has "determined" no such thing.

The statement of facts in Anderson and Majors's motion for summary judgment was based on Mills's version of the events and was offered as undisputed "for purposes of this motion for summary judgment only." Memorandum Brief in Support of Motion for Summary Judgment at 3 [#46]. This is standard practice when filing a motion for

4

summary judgment, which is designed to test the sufficiency of the parties' respective claims against the evidence as viewed "in the light most favorable to the nonmoving party." *E.g.,* Grace United Methodist Church v. City of Cheyenne, 427 F.3d 775, 782 (10th Cir. 2005). The Court, in entering its Order Re: Defendants' Motion for Summary Judgment, quite properly described the facts in the light most favorable to Mills. It cannot reasonably be said that the Court conclusively "determined" Mills's account as to how he stole the interpleaded funds to be the truth.

## V.  THE COURT SHOULD GIVE NO WEIGHT TO MILLS'S ACCOUNT OF HOW HE STOLE THE FUNDS.

As noted above, the Court should strike Mills's Response to Motion for Release of Interpleaded Funds to Leah Anderson due to his lack of standing. Nevertheless, if the Court is inclined to consider the evidence that Mills has offered, it also should bear in mind the points raised below.

### A.  Mills lacks credibility. He is a habitual liar and career felon.

Mills is a habitual liar and thief. No weight should be accorded to his contention that Wayne Majors sent him to Las Vegas, Nevada to pick up over $1 millon, that Mills brought the funds back to Colorado, and that Mills thereafter decided to steal the funds.

Mills repeatedly lied to Detective Chavez of the Douglas County Sheriff's Department about his theft of the funds. Mills initially told Detective Chavez that he had not stolen any money. *See* Chavez dep. at 26:4-6, attached as Ex. 4. Mills only confessed to Detective Chavez that he stole the money after Detective Chavez told Mills that he had a tape recording of Mills confessing to the crime. *See id.* at 60:16-20.

Furthermore, Mills lied to his own girlfriend, Michelle Simono ("Simono") about why he left Colorado in December 2004 after stealing the funds. Mills told Simono that "he had to go do some work for Mr. Majors and he was leaving for a while, about a month." Simono dep. at 26:14-16, attached as Ex. 5. Simono later learned that Mills lied about his reasons for fleeing Colorado. *Id.* at 27:1-6. Mills also told Simono that he had entered the witness protection program. *See id.* at 28:15-23. That, too, was untrue. *See id.* at 29:3-6.

Mills is a career felon. Not only does Mills admit stealing the interpleaded funds in this case; he was convicted on three counts of robbery in 1986, for which he was sentenced to 25 years in prison. Mills later escaped, was apprehended, and was convicted on one count of escape. Mills also was convicted for attempted theft in 1988, for which he was sentenced to ten years. That sentence was suspended in exchange for waiving extradition back to the state from which he had escaped.[2] *See* Jerry Mills's Response to Leah Anderson's and Wayne Majors' First Set of Discovery, Response to Interrogatory No. 4, attached as Ex. 6.

**B.     Mills has a clear motive for lying about how he stole the money.**

Mills's motive for lying about how he stole the money is apparent on the face of the affidavit attached to his Response to Motion for Release of Interpleaded Funds to

---

[2] Mills's prior convictions are admissible as evidence of his lack of credibility. *See* Fed.R.Evid. 609(a). It appears Mills was released from prison in or about 2000 or early 2001. *See* Affidavit of Leah M. Anderson ¶ 4, attached as Ex. 1 to Motion for Release of Interpleaded Funds to Leah Anderson (stating that Mills told her he had served 14 years in prison). Mills states that he finally was released from parole on June 17, 2005. Ex. 6, Response to Interrogatory No. 4.

Leah Anderson. Mills states: "I never told Detective Chavez that I took the money from Metzger's attic. If I had told Chavez that I took the money from Metzger's attic, he would have arrested me, because that is the alleged crime he was investigating."

Mills is a career criminal. He certainly would be expected to know that venue is an element of a criminal offense that must be proved by the prosecution. Mills understandably did not want to be arrested and sent back to jail. He therefore lied to Detective Chavez, telling him that he stole the money from Las Vegas, Nevada, which is outside of Detective Chavez's jurisdiction.

### C. Mills's story that he obtained the interpleaded funds in Las Vegas, Nevada is not corroborated by any evidence.

Mills admits that he has no documents evidencing payments for food, gas, lodging, or other expenses incurred by him during his alleged trip to Las Vegas, Nevada. *See* Ex 6, Response to Request for Production of Documents No. 3. Other than Mills's unbelievable and self-serving statements, there is no evidence that he obtained the funds in Las Vegas, Nevada. By contrast, Anderson has provided the Court with ample documentary evidence supporting her claim to the funds.

### D. The documentary evidence refutes Mills's version of events.

The cornerstone of Mills's contention in this case is that he obtained the funds in Las Vegas, Nevada while on an errand for Majors, who was in Colorado. According to the story that Mills told the IRS, Majors "direct connect" called him on his Nextel phone the evening of December 18, 2004, and instructed him to run to Las Vegas immediately to pick up a package. *See* Memorandum of Interview ¶ 9, attached as Ex. 7. Mills

7

further told the IRS that, after arriving in Las Vegas on the morning of December 19, 2004, he direct connected Majors twice on his Nextel phone to receive further instructions.  *See id.*

Nextel billing statements prove that Mills made no such calls to Majors on the morning of December 19, 2004.  *See* Second Affidavit of Leah Anderson, attached as Ex. 8.  If what Mills said were true, the statements would show any long-distance direct connect calls that Mills made to Majors on the morning of December 19, 2005, when Mills claims he was in Las Vegas.  The Nextel statements instead show that Mills and Majors had no long-distance direct connect communication between December 6, 2004 and December 24, 2004.  *See id.*

### E.    Mills's contention that the money was dirty and smelled bad is explained by the fact he hid it among hay and near horse manure.

Mills makes much ado about Detective Chavez's testimony that the money he recovered was dirty and smelled bad.  According to Mills, the money cannot be Anderson's because, had the money been stored in Anderson's brother's attic, it would not be dirty or smelly.  Mills neglects to mention that, after stealing the money, he hid it among hay used to feed horses and in proximity to horse manure and urine.

Mills told Special Agent Kareem Carter that he buried the money among some hay next to a horse barn for a period of several days.  *See* Ex. 7 ¶¶ 10, 13.  Like all good liars, Mills combined elements of truth and falsehood when he told his story to Special Agent Carter.  Mills probably did hide the money among piles of hay for several days while Anderson was out of town.

8

Mills's *modus operandi* of hiding the money in dirty, smelly places was further corroborated by his girlfriend, Michelle Simono, who testified as follows:

> Q. And where were you when Mr. Mills handed you this money.
> A. He didn't actually hand it to me. He left it for me on the hay in the barn at 20085 East Main Street, and he left me a note and said to put it somewhere safe.
> . . .
> Q. You just came across this money in the barn?
> A. Well, I went over to feed the horses, as I did twice a day, and it was sitting there on the hay.

Ex. 5 at 21:10-22. It is anyone's guess where else Mills might have stashed or buried the money during the approximately three-week period that he was on the run. Given the foregoing evidence, it is hardly surprising if the money was dank, dirty, and smelly when Detective Chavez recovered it.

WHEREFORE, Defendant Leah Anderson respectfully request that the Court enter judgment her favor for the interpleaded funds in the full amount of $534,070, together with any accumulated interest.

Respectfully submitted December 16, 2005.

s/ Ross W. Pulkrabek
Richard B. Caschette
Ross W. Pulkrabek
Justin G. Blankenship
STARRS MIHM & CASCHETTE LLP
1675 Broadway, Suite 1800
Denver, CO 80202
Phone: (303) 592-5900/Fax: (303) 592-5910
rcaschette@starrslaw.com
rpulkrabek@starrslaw.com
blankenship@starrslaw.com
*Attorneys for Defendants Leah Anderson and Wayne Majors*

9

CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.

In addition, I hereby certify that on December 16, 2005 a courtesy copy of the foregoing was sent by United States mail, postage prepaid, addressed to the following as counsel for Jerry Mills, whose claims were dismissed pursuant to the Court's Order of October 19, 2005 [docket # 78]:

Steven Janiszewski, Esq.
Riggs, Abney, Neal, Turpen,
Orbison & Lewis, Inc.
7979 E. Tufts Avenue Parkway, Ste 1300
Denver, Colorado 80237
sjaniszewski@riggsabney.com

(Courtesy copy only)

          s/ Ross W. Pulkrabek
          Richard B. Caschette
          Ross W. Pulkrabek
          Justin G. Blankenship
          STARRS MIHM & CASCHETTE LLP
          1675 Broadway, Suite 1800
          Denver, CO 80202
          Phone: (303) 592-5900/
          Fax: (303) 592-5910

          rcaschette@starrslaw.com
          rpulkrabek@starrslaw.com
          jblankenship@starrslaw.com
          *Attorneys for Defendants Leah Anderson and Wayne Majors*