IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-CV-637-REB-PAC

**UNITED STATES OF AMERICA**
    Plaintiff,

v.

**LEAH ANDERSON, WAYNE MAJORS, WESLEY METZGER,
and JERRY MILLS,**
    Defendants.

---

**DEFENDANT JERRY MILLS'S
MOTION TO RECONSIDER RULING [78] ON DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT
AS IT APPLIES TO HIS CROSS CLAIMS,
WITH INCORPORATED AUTHORITY**

---

**COMES NOW** Defendant Jerry Mills, by and through the law firm of Riggs, Abney, Neal, Turpen, Orbison & Lewis, Steven Janiszewski, and, pursuant to F.R.Civ.P. 54(b), submits his MOTION TO RECONSIDER RULING [78] ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS IT APPLIES TO HIS CROSS CLAIMS, WITH INCORPORATED AUTHORITY.

**D.C.COLO.LCIVR 7.1 A CERTIFICATION**

1.    Pursuant to D.C.Colo.LCivR 7.1 A, Counsel has conferred with Richard B. Caschette, lead counsel for Defendants Anderson and Majors, about this MOTION and reports that those Defendants will oppose this Motion.

**F.R.CIV.P. 54(b) and The Law of the Case**

2.  Until it becomes embodied in a final judgment, a legal ruling remains interlocutory and subject to revision by the court that made it. *See, e.g., United States v. LoRusso,* 695 F.2d 45, 53 (2d Cir.1982) ("A district court has the inherent power to reconsider and modify its interlocutory orders prior to the entry of judgment...."); *Collins v. State,* 60 F.3d 837 (Table), 1995 WL 405112, at *1 (10th Cir.1995) (unpublished disposition) ("All orders prior to the district court's final order ... were interlocutory; that is, subject to change while the case was ongoing."). Fed.R.Civ.P. 54(b) spells this out as to rulings that may be dispositive of claims: any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and *the order or other form of decision is subject to revision at any time before the entry of judgment* adjudicating all the claims and the rights and liabilities of all the parties. [Emphasis added.]

3.  Under the law of the case doctrine, courts are permitted to overturn erroneous rulings as the underlying policy of the doctrine is one of efficiency, *Major v. Benton,* 647 F.2d 110, 112 (10th Cir.1981), not restraint of judicial power, *Messinger v. Anderson,* 225 U.S. 436, 444, 32 S.Ct. 739, 56 L.Ed. 1152 (1912). Indeed, the presence of new evidence or subsequent contradictory precedent or a determination that the previous ruling was clearly erroneous are legitimate bases for not applying the law of

the case doctrine. *Major,* 647 F.2d at 112; *Prairie Band of Potawatomi Nation v. Wagnon,* 402 F.3d 1015, 1018 (10th Cir.2005).

## New Evidence Makes This Court's Previous Ruling Clearly Erroneous As To Mills's Cross Claims

4.   Subsequent to this Court's issuing its ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [78] (hereinafter, ORDER), Defendant Wayne Majors relinquished any potential claim that he may have to the funds at issue in this case. Affidavit Of Wayne Majors, paragraph 6 [80, App. Exhibit 2]. Majors never did file a claim to the interpleaded fund, as Mills noted in his BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT [70], arguing that judgment cannot enter on a claim not presented. [70, pp. 1-4] This Court did not give the money to Majors, but this Court did base its ruling that Mills has no rightful claim of ownership to the interpleaded fund upon an assumption that Majors did have an ownership interest in the money. Now that Majors has unequivocally relinquished any claim to the money, that assumption is not valid. Mills could not have stolen the money from Majors, as this Court found in its Order [70, p.3].

5.   This Court relied upon *United States v. Estep,* 760 F.2d 1060, 1064 (10th Cir. 1985) to enter summary judgment against Mills on his first Cross Claim for the funds and upon *Ziegler v. Inabata of America,Inc.*, 316 F.Supp.2d 980, 916 (D. Colo. 2004), to enter summary judgment against Mills on his second (alternative) Cross Claim, for a reward. [78, p.3].

**Mills Is Entitled To The Interpleaded Funds.**

6.   *Estep* is inapposite and does not support an entry of summary judgment against Mills on his first Cross Claim. *Estep* is a criminal case; whereas, this is an equitable civil case. *Texas v. Florida,* 306 U.S. 398, 406, 59 S.Ct. 563, 567, 83 L.Ed. 817 (1939)(the sole rationale for equitable relief to the plaintiff stakeholder in an interpleader is the danger of exposure to double liability). *Estep* applied F.R.CR.P. 41; whereas, common law principles apply in this case. This Court's ruling is contrary to the well–settled common law rule that a thief in possession of stolen goods has an ownership interest superior to the world at large, save one with a better claim to the property (*see*, *People v Zincke*, 76 NY2d 8, 11 (N.Y. App. 1990), *citing*, *Ward v People*, 6 Hill 144; *see also*, *Anderson v Gouldberg*, 51 Minn 294, 296, 53 NW 636, 637 (1892) (a possessor of logs acquired by trespass had a right to them "against all the world except those having a better title."); *Odd Fellows' Hall Ass'n v McAllister*, 153 Mass 292,295, 26 NE 862, 863 (Holmes, J.) (1891) ("Whatever may have been the old law * * * at the present day one who has possession of goods is entitled to keep them as against any one not having a better title * * *").

7.   Another fatal flaw in this Court's reliance upon the *Estep* case is *Estep*'s reliance on *City of Waco v. Bridges*, 710 F.2d 220 (5th Cir. 1983) and *United States v Wright*, 610 F.2d 930 (D.C. Cir. 1979), for the proposition that "He may also prove that the claimant in possession holds the money unlawfully." *Estep*, 760 F.2d at 1064. The entire quote from *Estep*, utilized by this Court at Order [78], page 3 is:

> Cases identify two methods of rebutting a possessory claim of ownership of money. An **adverse claimant** may prove ownership by positive

4

> identification of the money. ***He*** may also prove that the claimant in possession holds the money unlawfully.    Emphasis supplied.

The pronoun "He" in the third sentence of the above-quoted passage refers to the "adverse claimant," which is the subject of the previous sentence. There is no claimant adverse to Mills in this case.  Majors has relinquished his claims to the money. This Court's factual findings regarding the events by which the money came into Mills's possession [78 pp. 1-3] are not challenged here; nor has any other F.R.Civ.P. 54(b) motion challenged those findings.  As to Defendant Anderson, this Court ruled her out by finding that "There appears to be no evidence that Anderson was involved in the events by which the money came into Mills's possession initially...." Order [78], page 4. That finding has not been challenged or changed. Only *an adverse claimant* can prove that the claimant in possession holds the money unlawfully, *Estep*, 760 F.2d at 1064; *Waco,*  710 F.2d 220; and *Wright*, 610 F.2d 930, and, in this case, there is no such adverse claimant to rebut Mills's possessory interest.

      8.     *Waco*, 710 F.2d 220, is not inapposite, because it is a civil interpleader case, but it is imminently distinguishable from the case at bar on the facts. In *Waco*, the jury determined that Garcia and Bridges had obtained possession of the money "without the consent of the *true owner*, knowing or believing that the owner could be found." *Waco*, 710 F.2d 220, 224.  Here, no such finding has been made, nor can it be made. Mills has maintained all along that the money did not belong to Majors. See the Douglas County Sheriff's interview of Mills. [45 App. Exhibit A] See Transcript of Deposition of Jerry Mills, p. 40, line 6, through p. 41, line 22, attached as Exhibit 1. Majors has now corroborated Mills's position, by relinquishing any potential claim that he may have to

the interpleaded fund. No one knows who the true owner is, or, perhaps more accurately, who the true owners are.

9. *Wright*, 610 F.2d 930, not does not support this Court's ruling, because in *Wright*, the person in the position analogous to Mills's position prevailed. Indeed, the *Wright* court held that

> The seizure of property from someone is Prima Facie evidence of that person's entitlement, particularly when the seized property is money [FN37] negotiable instruments difficult to identify and trace. ***The whole thrust of the cases that we have cited is that when property is seized from a person, the court must return it to that person when it is no longer needed by the government.*** [FN38] The Court is obligated to restore the Status quo ante. ***Unless there are serious reasons (presented by the government or adverse claimants) to doubt a person's right to the property seized from him, he need not come forward with additional evidence of ownership.*** [FN39]  *Wright*, 610 F.2d 930, at 939.   Emphasis supplied.

The *Wright* case supports Mills's claim to the interpleaded fund presented in his first Cross Claim.

10. Besides being inapposite, *Estep* is imminently distinguishable from the case at bar on the facts. In *Estep*, Mr. Estep's co-defendant, Pamela Rollins, turned the money over to the FBI, and the Estep court found that "There would seem to be a substantial question as to whether Pamela Rollins was the person who had 'possession' of the money." *Estep,* 760 F.2d at 1064.  Whereas, here, it is uncontroverted that Mills had possession of the funds at issue in this case; and, that he turned the funds over to the Douglas County Sheriff. At his deposition, Detective Chavez, of the Douglas County Sheriff's Office, clarified his understanding of who possessed the money and who turned it in to him, as follows:

6

Q. Now, you testified near the end that the total amount of the money that you collected from Mills was 5 - - 500,000 - - 500,000 -

  MR. CASHETTE: 534,000

Q. (BY MR. JANISZEWSKI) - - 534,000?

A. That wasn't from Mills. That was the entire monies recovered.

Q. Right. And isn't it true that Mills assisted you in collecting all that money?

A. Yes.

Q. Okay. After this deposition, do you feel as though you should run out and charge the relatives and friends of Jerry Mills who received some of this money with accessory or theft by receiving or something?

A. No.

Q. Do you recall near the end of the—of the direct examination, you were going back and forth with counsel about where the crime occurred?

A. Yes.

………

Q. Okay. If this is the way he got the money, is it fair to say that your interpretation is the crime occurred in Vegas?

A. Yes. Jerry Mills did not take money from the attic of that house.

Q. Right.

A. I have no doubt in saying that. I have no hesitation in saying that whatsoever. Jerry Mills got that money when he did a run for Mr. Majors.
[81 App. Exhibit 2]

 11. The most distinguishing fact about the *Estep* case is that in *Estep*, the court found that the bank was the true owner of the money. *Estep,* 760 F.2d at 1065. Whereas, here, the identity of the true owner has not been established. While it is true

7

that Anderson has filed a MOTION FOR RELEASE OF INTERPLEADED FUNDS TO LEAH ANDERSON [80], in which she claims to be the true owner, this Court has not yet ruled on it. Mills has filed a RESPONSE [81] to Anderson's MOTION [80] and will not repeat here the arguments therein. He will note, however, that, according to Anderson's MOTION, Mills did not pick up the money in Las Vegas. As of this date, the original adverse claimants in this case have not rebutted the Prima Facie evidence of Mills's entitlement to the interpleaded funds. Given this Court's factual findings that Mills picked up $1.1 million in cash in Las Vegas, spent or distributed some of it, and turned the remainder over to investigators at the Douglas County Sheriff's Office [78, p. 3], this Court should, eventually, return the interpleaded funds to Mills. *Wright*, 610 F.2d 930, at 939. At this point, this Court should reverse its Order [78] as to Mills's first Cross Claim and issue an Order reinstating that claim.

### Mills's Second Cross Claim

12. *Ziegler v. Inabata of America,Inc.*, 316 F.Supp.2d 980, 916 (D. Colo. 2004), does not support this Court's entry of summary judgment against Mills on his second cross claim, in the alternative, for a reward. In footnote three of its Order, this Court reasons that

> Mills's alternative claim that the money be turned over to the government and he be awarded 30 percent as a reward for having turned it in, fares no better. As against the rightful owner of the property, Mills's actions essentially amount to civil theft, see **§18-4-405**, C.R.S., as to which the return of the purloined property would neither purge him of guilt, see ***Ziegler v. Inabata of America, Inc.***, 316 F.Supp.2d 908, 916 (D. Colo. 2004), nor entitle him to a reward.

13. First, Mills's second Cross Claim is a conditional claim, which would require "this Honorable Court to find that *none of the defendants deserve the funds*, because *none of them is the true owner*, and, therefore, the true owner is the United States." [#13, paragraph 15] The purpose of §18-4-405, C.R.S., is that the true owner of property may recover property lost by theft, robbery, or burglary, and obtain treble damages as a punitive measure. *Marriage of Allen*, 724 P.2d 651, 656 (Colo. 1986). If this Court were to find that none of the defendants is the true owner, none of the defendants would have standing to invoke §18-4-405, C.R.S., against any other defendant.

14. This Court's legal conclusion, above, that "Mills's actions essentially amount to civil theft" is not supported by factual findings in this Court's Order [78]. This Court judiciously refrained from naming a true owner and directed Anderson and Majors to perfect a claim to interpleaded fund by November 18, 2005, implicitly rejecting any claim to the fund that Anderson and Majors had presented up to that point [78, pp.3-5].

15. That return of purloined property to the true owner does not purge one of theft, is not contested. Return has no impact on theft. *Ziegler*, 316 F.Supp.2d 908, 916, addressed the issue as follows:

> The crucial determination is whether Defendants knowingly took Ziegler's stock or failed to award it to him with the intent to deprive permanently Ziegler of his rightful ownership of the ten percent interest in Resonance.

16. Here, Mills turned some of the money now held by the Court over to the Douglas County Sheriff and enable the Sheriff to collect the rest of it. He claimed that he did not steal it from Wesley Metzger's attic, as Leah Anderson was alleging at the

9

time. [45 App. Exhibit A]. The crucial determination here, analogous to the determination that had to be made in *Ziegler*, is whether Mills knowingly took Anderson's or Majors' money with the intent to deprive her or him permanently of her or his rightful ownership of the money. That determination has not been made. Therefore, this Court erroneously granted summary judgment dismissing Mills's second Cross Claim.

**WHERFORE**, Defendant Jerry Mills prays that this Honorable Court reverse its entry of summary judgment dismissing his claims to the interpleaded fund and reinstate his claims.

Dated: September 19, 2005

RESPECTFULLY SUBMITTED,


/s/ Steven Janiszewski
Steven Janiszewski
**RIGGS, ABNEY, NEAL, TURPEN, ORBISON & LEWIS**
7979 East Tufts Avenue Parkway, Suite 1300
Denver, Colorado 80237
Phone:      (303) 298-7392
Fax:    (303) 298-1319
ATTORNEY FOR DEFENDANT JERRY MILLS

10

CERIFICATE OF SERVICE

I hereby certify that on September 19, 2005 I electronically filed the foregoing **DEFENDANT JERRY MILLS'S MOTION TO RECONSIDER RULING [78] ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS IT APPLIES TO HIS CROSS CLAIMS, WITH INCORPORATED AUTHORITY** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses

James S. Russell
Assistant United States Attorney
1225 17th Street, Suite 700
Denver, Colorado 80202
James.Russell2@usdoj.gov

Richard B. Caschette
Starrs Mihm & Caschette LLP
1675 Broadway, Suite 1800
Denver, Colorado
rcachette@starrslaw.com

/s/ Steven Janiszewski_____

11