IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  05-cv-00637-REB-PAC

UNITED STATES OF AMERICA,

    Plaintiff,

v.

LEAH ANDERSON,
WAYNE MAJORS,
WESLEY METZGER, and
JERRY MILLS,

    Defendants.

_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Patricia A. Coan, United States Magistrate Judge

This is an interpleader action brought under Rule 22, Fed. R. Civ. P. and 22 U.S.C. §1335.  *See* April 5, 2005 Complaint for Interpleader and Injunctive Relief, Doc. # 1(Compl.).  Jurisdiction arises under 28 U.S.C. §1345.  An April 15, 2005 order of reference referred this action to the undersigned for pretrial case management.  *See* Doc. # 6.

As of October 19, 2005, the only claimants to the interpleaded funds were Leah Anderson and Wayne Majors.  See Order Re: Defendants' Motion for Summary Judgment, Doc. # 78 at 4.  A January 18, 2006 Amended Order of Reference referred dispositive motions for recommended disposition.  *See* Doc. # 87.  The matter now before the court is defendant Leah Anderson's Motion for Release of Interpleaded Funds to Leah Anderson, Doc. #80, filed November 18, 2005.  The Motion has been

05-cv-00637-REB-PAC
July 12, 2006

fully briefed in that defendant Mills filed a response to which Anderson replied.  *See* Docs. ## 81-82.  The Court held an evidentiary hearing on the motion on February 16, 2006.  *See* Minutes, Doc. # 101.  Leah Anderson, Wayne Majors and Wesley Metzger were the only parties participating in the hearing and their testimony was presented.  *See id.*  Exhibits 1 through14, excluding exhibit 2A, were admitted.  *See id.*  Because no defendant remained to challenge Anderson's motion, and because defendant Majors stated at the hearing that the money belonged to Anderson, *see* February 16, 2006 Hearing Trs. 79:1-3, the purpose of the hearing was to assess the witnesses's credibility and to determine whether Ms. Anderson is entitled to receive the interpleaded funds under *United States v. Estep*, 760 F.2d 1060 (10th Cir. 1985).  *See* Order Re: Defendants' Motion for Summary Judgment, Doc. # 78 at 3-4.

## *I. Background*

After filing this action against Leah Anderson, Wayne Majors, Wesley Metzger, and Jerry Mills on April 5, 2005, *see* Compl., Doc. # 1, plaintiff United States deposited $533,970 into the Registry of Court.  *See* July 13, 2005 and August 22, 2005 receipts, Docs. ## 33, 44.  Default judgment restraining and enjoining Wesley Metzger from commencing any actions against the United States relative to the subject funds and discharging the United States from any liability to Metzger was entered in favor of the United States against defendant Wesley Metzger on September 12, 2005.  *See* Default Judgment Only as to Defendant Wesley Metzger, Doc. # 62.  On September 19, 2005, the United States was discharged from any further liability to any of the parties in the action regarding the subject funds and from any further participation in the case.  *See*

05-cv-00637-REB-PAC
July 12, 2006

Partial Judgment as to the United States Only, Doc. # 71. Defendant Jerry Mills's claims to the interpleaded funds were dismissed with prejudice on October 19, 2006. *See* Order Re: Defendant's Motion for Summary Judgment, Doc. # 78. As of the February 16, 2006 hearing date, the only remaining claimants to the interpleaded funds were defendants Leah Anderson and Wayne Majors. *See* Doc. # 78 at 4. Wayne Majors' cross-claims[1] against Jerry Mills were dismissed on April 18, 2006. *See* Doc. # 106.

## *II. Evidentiary Hearing*

The following evidence was obtained at the February 16, 2006 hearing.

Ms. Anderson lived in Las Vegas, Nevada in 2000 and during the first half of 2001. *See* Trs., 6:24-25. Anderson then moved to Reno, Nevada, where she lived from August 2001 to January 2003. *See* Trs., 6:25 - 7:2. In January of 2003, Ms. Anderson moved back to Las Vegas, Nevada for ten months, then relocated to Parker, Colorado for about a year before moving to her current residence in Castle Rock, Colorado. *See* Trs., 7:1-9.

Anderson was employed by her consulting business, Anderson Management Company, in 2000 and 2001; her business provided contract administrative services for American Attorneys Center (AAC), a Sacramento, California law firm that did high volume bankruptcy work. *See* Trs. at 5-6, 47. In 2002, Ms. Anderson became an employee of American Legal, Inc., a subsidiary of AAC; American Legal then managed and still manages AAC's media campaign, its accounts receivables, and all of its

---

[1] Majors's claims were styled as counterclaims. See Doc. # 105.

-3-

05-cv-00637-REB-PAC
July 12, 2006

billing.  *See* Trs., 6:4-18.  Ms. Anderson currently is employed by American Legal, Inc. *See* Trs., 47:22-24.

In 2002, the Internal Revenue Service (IRS) seized a large amount of money and jewelry from Ms. Anderson's home in Reno, Nevada.  *See* Trs., 12:1-3.  Following the 2002 IRS seizure, Ms. Anderson began saving cash at home rather than keeping it in a bank.  *See* Trs., 12:1-5.  According to Ms. Anderson, she kept the money in a safe in her home so that it was not subject to seizure, and because, once the "situation" with the IRS was resolved, she would have money to pay the IRS if it found that Ms. Anderson owed money.  *See* Trs., 12:6-18.

From 2002-2004, Ms. Anderson earned compensation in the amount of approximately $1,370,389.75.  *See* Trs., 13:21 - 14:15; Hearing Exhs. ## 2,7.[2]

In the first half of 2002, Ms. Anderson loaned her father-in-law $250,000, which he paid back in five equal payments in August and September of 2002.  *See* Trs., 14:17-21; Hearing Exh. # 2B.  Anderson cashed the loan payment checks and put the money in her home safe.  *See* Trs., 14:24 - 15:3 .

Between June 2002 and September 2002, Ms. Anderson closed a personal account and a business account at Heritage Bank in Reno, Nevada.  Anderson received $18,900 and $24,365 in cash respectively from closure of those accounts. *See* Trs. at 16-17; Hearing Exhs. ## 3 & 4.  Ms. Anderson took the cash and placed it in the safe in her home.  *See* Trs., 16:20-23.  Anderson opened an account at Cal Fed

---

[2]A review of Exhibit 7 indicates that American Legal paid Ms. Anderson about $25,000 gross per month in wages.  *See* Hearing Exh. 7.  American Legal also paid Anderson significant "miscellaneous income."  *See, e.g.*, Ex. 2 at 1, 3.

-4-

-5-

05-cv-00637-REB-PAC
July 12, 2006

Bank in Reno, Nevada in October 2002 and closed it by the end of that month. Ms. Anderson deposited a cashier's check from Heritage Bank in the Cal Fed account and eventually withdrew $91,200 in cash when she closed the Cal Fed account. *See* Trs. at 17-18; Hearing Exh. # 5. She withdrew the cash in hundred dollar bills. *See* Trs., 18:14-16

Ms. Anderson opened an account at the Wells Fargo, Park Lane Reno, Nevada Branch in December 2002 and continues to bank at Wells Fargo. *See* Trs., 18:19 - 19:5. From December 2002 through December 2004, Ms. Anderson withdrew approximately $316,275 in cash from her Wells Fargo account. *See* Trs.,19:14-23; Hearing Exh. # 6. During the same period of time, Ms. Anderson received $49,976.37 in cash-back funds when she made check deposits. *See* Trs., 20:25 - 21:23; Hearing Exh. # 6. Then, between January 2003 and February 2004, Ms. Anderson cashed some of her pay checks, totaling $93,559.47, instead of depositing them. *See* Trs., 22:5-17; Hearing Exh. # 7. Ms. Anderson put all of the cash that she received into her home safe. *See* Trs., 22:18-22.

Ms. Anderson estimates that she converted approximately $844,275.44 to cash, mostly in one hundred dollar bills, between 2002 and December 2004, from all of her cashed payroll checks, cash back funds, and other withdrawals. *See* Trs., 13:2-14; 23:13-18. Allowing for $100,000 to $150,000 in cash expenditures on rent and utilities, Ms. Anderson roughly estimates that she had approximately $700,000 to $750,000 in cash in her home safe in December 2004 which is the approximate amount of money

05-cv-00637-REB-PAC
July 12, 2006

that she testified Jerry Mills[3] later removed from Anderson's brother's[4] attic.  *See* Trs., 23:19 - 24:13.

Ms. Anderson planned to spend the Christmas of 2004 in Mobile, Alabama.  *See* Trs. at 8-9.  Although she had intended to put the money in her safe into a safety deposit box, *see* Trs., 8:13-17, on December 21, 2004, Ms. Anderson placed the cash in three safe boxes and took the money to her brother's home at 4600 North Mesa Drive; Castle Rock, Colorado.   *See* Trs., 8:15-17; 9:7-8.  Because of an emergency with one of Ms. Anderson's daughter's horses, Anderson was unable to put the money into a safety deposit box, so she had her brother put the boxes with the money in his attic.  *See* Trs., 8:18-22.

As of December 21, 2004, Jerry Mills was employed by American Legal[5]; during Anderson's December 2004 vacation and for the purpose of answering client calls and handling couriers, Mills had access to Wesley Metzger's home because American Legal's office was located in the basement of the home.  *See* Trs. at 9-10.  When Ms. Anderson and her family returned from their vacation, Jerry Mills did not show up for work.  *See* Trs., 9:1-2.  Approximately a week after returning, Ms. Anderson discovered the money was missing.  *See* Trs., 9:2-6.  According to Ms. Anderson, Jerry Mills removed the money from Mr. Metzger's attic.  *See* Trs., 24:10-13.   Ms. Anderson

---

[3]Former co-defendant Jerry Mills, and the person Anderson accuses of stealing the $700,000 to $750,000 in cash from her brother's attic.  *See* Trs., 24:10-13.

[4]Anderson's brother is former co-defendant Wesley Metzger.

[5]In 2002, defendant Jerry Mills worked for Major Brand Sales & Leasing, a business in Reno, Nevada, owned by Anderson's father-in-law.  *See* Trs., 7:12-18.  In early to mid 2003, Mills began working for American Legal.  *See* Trs., 7:19-23.

05-cv-00637-REB-PAC
July 12, 2006

reported the theft of the money to the Douglas County Sheriff's Department on December 31, 2004.  *See* Trs., 10:9-16.[6]  Anderson identified the interpleaded funds as hers from photographs taken by the government; she also identified some money bundles based upon the handwritten notations her husband, co-defendant Wayne Majors, made on the bills.  *See* Trs. at 24-28; Hearing Exhs. ## 8, 8A-8E.  Ms. Anderson could identify other bills as hers from her banks' bands around some money bundles.  *See Id.*  Mr. Majors confirmed that his handwriting was found on the bills and bands holding many of the bills.  *See* Trs. at 81-84.

At the hearing, Wayne Majors disclaimed any interest in the interpleaded funds. *See* Trs., 79:1-3.

### III. Recommended Findings of Fact

From the evidence presented at the February 16, 2006 hearing, and because I found Ms. Anderson to be credible, I recommend finding as follows.

1) that Ms. Anderson was paid approximately one million, three hundred-seventy thousand dollars by her consulting business and by American Legal between January 1, 2002 and December 21, 2004;

2) that she additionally received $250,000 in loan payments from her father-in- in late 2002;

3) that, between January 1, 2002 and December 21, 2004, Anderson cashed paychecks, received cash back or closed out bank accounts for cash in the total

---

[6] It is apparently undisputed that, on January 10, 2005, Jerry Mills voluntarily went to the Douglas County Sheriff's Office and turned in $534,070, *see* Compl. ¶6, Doc. #1; that IRS agents took possession of the money from the Douglas County Sheriff on January 28, 2005, *see id.* ¶8, and that the same monies are now in the Registry of the Court.

05-cv-00637-REB-PAC
July 12, 2006

amount of $844,275.44;

    4) that, due to fears of IRS seizure, Anderson kept the cash described in paragraph three above at her home; and

    5) that, as of December 21, 2004, Anderson had aporoximately $700,000-750,000 in cash stored in her home.

    6) On or about December 21, 2004, Anderson placed the money in safe boxes and moved the boxes to her brother, Wesley Metzger's home, where her brother stored the boxes in the attic while Anderson went on a family vacation.

    7) Within a few days of returning from vacation, Anderson found that the safeboxes with approximately $700,000-$750,000 in cash were missing.

    8) Jerry Mills had access to Metzger's home and therefore to the safeboxes described in paragraph 7) above while Anderson was on vacation.

    9) Jerry Mills turned over approximately $534,070 to the Douglas County Sheriff's Office on January 10, 2005.

    10) Anderson was able to identify most, but not all, of the bundles of bills as hers from photographs taken of the funds Jerry Mills turned in to the Douglas County Sheriff.

    11) The United States, through its Internal Revenue Service agents, took possession of the $534,070 from the Douglas County Sheriff on or about January 28, 2005. *See* Compl. ¶8.

    12) The United States deposited $533,970 into an interest bearing account in the Registry of this Court.

    13) Wayne Majors has disclaimed any interest in the interpleaded funds.

05-cv-00637-REB-PAC
July 12, 2006

14)   The only remaining claimant to the interpleaded funds is Leah Anderson.

15)   Leah Anderson was a credible witness, and

16) Leah Anderson is entitled to all of the funds deposited into the Registry of this Court.

### IV.  Standard and Analysis

"The standard of proof as to rightful ownership of funds is a preponderance of the evidence."  *United States v. Estep*, 760 F.2d 1060, 1065 (10th Cir. 1985)(quoting *United States v. LaFatch*, 565 F.2d 81, 83 (6th Cir. 1977).

The evidence was that Anderson was paid compensation of over 1.3 million dollars and was the recipient of $250,000 in loan payments between 2002 and December 21, 2004; that the compensation and loan payments were conveyed to her in checks; that she cashed some of those checks, received cash back on deposits, and closed bank accounts, retaining the cash; that the same cash, after certain expenses, totaled $700,000 to $750,000, which was stored at her home; that safe boxes containing $700,000 to $750,000 were transferred to her brother's home on December 21, 2004; that $700,000 to $750,000 was taken from Anderson's brother's house to which Jerry Mills had access; that Jerry Mills turned over approximately $534,070 to the Douglas County Sheriff's office on January 10, 2005; and that the United States took possession of the $534,070 from the Douglas County Sheriff on January 28, 2005 and later deposited $533,970 into the Registry of this Court.  I recommend concluding that the foregoing chain of events as established by a preponderance of the evidence indicates that Anderson is the rightful owner of the interpleaded funds.

An adverse claimant may prove ownership by positive identification of the

05-cv-00637-REB-PAC
July 12, 2006

money. *LaFatch*, 565 F.2d at 84-85 (as cited in *Estep*, 760 F.2d at 1064). At the hearing, Anderson identified the bulk of the subject funds from her husband's handwriting on a number of the bill bundles or on bank bands securing the bundles and she also identified some bill bundles by the bank bands around some of them which had the names of banks where Anderson had accounts. Mr. Majors, Anderson's husband, confirmed that his handwriting was on most bundles and bands. Accordingly, I recommend concluding that Anderson has, by a preponderance of the evidence, positively identified the bulk of the interpleaded funds as hers.

Ownership of disputed property also may be shown by circumstantial evidence. *Estep*, 760 F.2d at 1064 (affirming the trial court's finding that, although a bank claiming a right to stolen money could not make a positive visual identification of the money, there was more than ample evidence to meet the preponderance of the evidence standard that the funds in question were stolen from the bank). Although Ms. Anderson was not able to identify each and every one of the bills turned in to the Douglas County Sheriff, other circumstantial evidence leads to the conclusion that all the interpleaded money belongs to Anderson. Specifically, Anderson's testimony about her compensation, the loan payments, about cashing out bank accounts or receiving cash back on deposits, and cashing paychecks, along with her testimony about storing the cash at home, placing the monies at her brother's house, having it turned into the Douglas County Sheriff after it was found to be missing, and the sheriff's relinquishment of the funds to the United States, and Anderson's positive identification of most of the money is sufficient circumstantial evidence that the money bundles from the Douglas County Sheriff which accompanied the bundles Anderson was able to

05-cv-00637-REB-PAC
July 12, 2006

positively identify, also belong to Anderson.

Accordingly, I recommend concluding, that by a preponderance of the evidence at the February 16, 2006 hearing, Anderson has proven that she is the rightful owner of all of the interpleaded funds, which are now in the Registry of the Court.

*V.  Recommended Conclusions of Law*

1) The court has jurisdiction over this matter under Rule 22, Fed. R. Civ. P. and 22 U.S.C. §1335.

2) Anderson is the sole party remaining in this action with an interest in the interpleaded funds.

3) Anderson is entitled to the interpleaded funds in the amount of $533,970, plus any interest earned since the date of deposit, because she has shown, by a preponderance of the evidence, that the interpleaded funds belong to her.

*VI. Recommendations*

For the reasons stated, it is

**RECOMMENDED** that Defendant Leah Anderson's Motion for Release of Interpleaded Funds to Leah Anderson, Doc. # 80, be GRANTED.  It is further

**RECOMMENDED** that the interpleaded funds currently in the registry of the Court, together with any interest which has accrued since the date of deposit, be disbursed to defendant Leah Anderson within five days of the District Judge's order, if any, so directing.  It is further

**RECOMMENDED** that, immediately after disbursement of the interpleaded funds, this action, including claims, cross claims, and counterclaims contained in the action which have not been previously dismissed, be DISMISSED WITH PREJUDICE,

05-cv-00637-REB-PAC
July 12, 2006

each party to bear its, his, or her own attorney fees and costs.

**Within ten days after being served with a copy of the proposed findings and recommendation, any party may serve and file written objections to the proposed findings and recommendation with the Clerk of the United States District Court for the District of Colorado. The district court judge shall make a determination of those portions of the proposed findings or specified recommendation to which objection is made. The district court judge may accept, reject, or modify, in whole or in part, the proposed findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. Failure to make timely objections to the magistrate judge's recommendation may result in a waiver of the right to appeal from a judgment of the district court based on the findings and recommendations of the magistrate judge.**

Dated July 12, 2006.

BY THE COURT:
s/ Patricia A. Coan
PATRICIA A. COAN
United States Magistrate Judge